IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOSHUA MORRIS, Individually and for Others Similarly Situated,<br><br>     Plaintiff,<br><br>v.<br><br>ASCENDTEK, LLC, a Delaware limited liability company,<br><br>     Defendant. | Case No. _____<br><br>ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT<br><br>Jury Trial Demanded<br><br>FLSA Collective Action<br>Rule 23 Class Action |

## ORIGINAL CLASS & COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.     Joshua Morris (Morris) brings this class and collective action to recover unpaid overtime and other damages from AscendTek, LLC (AscendTek).

2.     Morris worked for AscendTek as a Foreman in Kent, Washington from approximately October 2019 until November 2023.

3.     Like the other Hourly Employees (as defined below), Morris regularly worked more than 40 hours in a week.

4.     But AscendTek does not pay them for all the hours they work.

ORIGINAL COMPLAINT - 1

JOSEPHSON DUNLAP, LLP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
(713) 352-1100

5.      Instead, AscendTek requires Morris and the Hourly Employees to work significant time "off the clock."

6.      Specifically, AscendTek prohibits Morris and the other Hourly Employees from clocking in when arriving at AscendTek's shop.

7.      Instead, AscendTek requires them to locate and gather necessary tools and equipment and receive instruction and information regarding the day's job(s) and permits them to clock in only upon departing from the shop to the first jobsite of the day.

8.      AscendTek further requires Morris and the Hourly Employees to complete daily reports and take and make phone calls after AscendTek requires them to clock out upon arriving back at the AscendTek shop.

9.      AscendTek thus requires Morris and the Hourly Employees to arrive at its shop, locate and gather necessary tools and equipment for the workday, receive instruction on the day's job(s), complete daily reports, and take and make phone calls "off the clock" and without compensation (AscendTek's "jobsite pay scheme").

10.     Additionally, AscendTek fails to provide Morris and the Hourly Employees with *bona fide* meal periods.

11.     And AscendTek fails to provide Morris and the Hourly Employees with *bona fide* rest periods.

12.     Instead, AscendTek requires Morris and the Hourly Employees to remain on-duty throughout their shifts and continuously subjects them to interruptions during their "meal periods" and "rest periods" and AscendTek continuously subjects them to work interruptions during any attempted "meal periods" and "rest periods."

13.     In addition to failing to pay its Hourly Employees for all their hours worked, AscendTek also fails to pay them overtime at the proper premium rate.

14.     Specifically, AscendTek pays Morris and its other Hourly Employees per diems.

15.     AscendTek knows these per diems should be, but are not, included in Morris's and its Hourly Employees' regular rates of pay for overtime purposes (AscendTek's and "per diem pay

ORIGINAL COMPLAINT - 2

scheme").

16.     AscendTek's jobsite pay scheme violates the Fair Labor Standards Act (FLSA), the Washington Minimum Wage Act (WMWA), and the Washington Wage Rebate Act (WWRA) by depriving Morris and the Hourly Employees of wages for all hours worked, including those worked in excess of 40 hours in a workweek.

17.     AscendTek's failure to provide Morris and its other Hourly Employees with *bona fide* meal and rest periods violates the Washington Industrial Welfare Act ("WIWA") and related Washington Dept. of Labor & Industries ("DOLI") regulations.

18.     AscendTek's per diem pay scheme violates the FLSA and WMWA by depriving Morris and the other Hourly Employees of overtime at rates not less than 1.5 times their regular rates of pay—based on all remuneration received—for hours worked after 40 in a week.

19.     Likewise, AscendTek's per diem pay scheme violates the WWRA by willfully withholding these earned wages from Morris and the other Hourly Employees.

## JURISDICTION & VENUE

20.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

21.     This Court has supplemental jurisdiction over the state-law subclass pursuant to 28 U.S.C. § 1367 because these claims arise from a common nucleus of operative facts.

22.     This Court has specific personal jurisdiction over AscendTek because AscendTek conducts substantial business in Washington.

23.     Specifically, AscendTek maintains an office in Kent, Washington and employs Morris and other Hourly Employees in Washington.

24.     Venue is proper because a substantial part of the events or omissions giving rise to this claim occurred in this District and Division. 28 U.S.C. § 1391(b)(1).

25.     Specifically, AscendTek employed Morris based out of its Kent, Washington facility.

JOSEPHSON DUNLAP, LLP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
(713) 352-1100

PARTIES

26.     Morris worked for AscendTek as a Foreman based out Kent, Washington from approximately October 2019 until November 2023.

27.     Throughout his employment, AscendTek classified Morris as non-exempt and paid him on an hourly basis.

28.     Throughout his employment, AscendTek subjected Morris to its jobsite pay scheme.

29.     Further, Morris did not receive bona fide meal periods or rest periods.

30.     And, throughout his employment, AscendTek subjected Morris to its illegal per diem pay scheme, paying him per diems that AscendTek improperly excluded from his regular rate for overtime purposes.

31.     Morris's written consent is attached as Exhibit 1.

32.     Morris brings this class and collective action on behalf of himself and other similarly situated hourly AscendTek employees who were subject to AscendTek's (1) jobsite pay scheme, (2) denied meal and/or rest breaks, and/or (3) per diem pay scheme.

33.     AsendTek uniformly requires Morris and the other Hourly Employees to work "off the clock," without compensation before their shifts locating and gathering necessary equipment for the day's job(s) and receiving instruction and information regarding the day's job(s) at AscendTek's shop.

34.     Likewise, AscendTek uniformly requires Morris and the other Hourly Employees to work "off the clock," without compensation after their shifts completing daily reports and taking and making phone calls.

35.     AscendTek uniformly fails to provide these employees with bona fide meal and rest periods, in violation of the WIWA and related Washington DOLI regulations.

36.     AscendTek also pays these employees per diems.

37.     AscendTek knows these per diems should be, but are not, included in the Hourly Employees' regular rates of pay for overtime purposes.

38.     Thus, AscendTek uniformly deprives these employees of overtime wages at rates

ORIGINAL COMPLAINT - 4

not less than 1.5 times their regular rates of pay—based on all remuneration received—for hours worked after 40 in a week in violation of the FLSA and WMWA.

39.     Likewise, AscendTek willfully withholds these earned wages in violation of the WWRA.

40.     The FLSA Collective of similarly situated employees is defined as:
All hourly, non-exempt AscendTek employees who were subject to AscendTek's (1) jobsite pay scheme and/or (2) per diem pay scheme at any time during the past 3 years ("FLSA Collective").[1]

41.     Morris also seeks to represent such a class under Washington laws pursuant to FED. R. CIV. P. 23.

42.     The Washington Class of similarly situated employees is defined as:
All hourly, non-exempt AscendTek employees in Washington who were subject to AscendTek's (1) jobsite pay scheme, (2) per diem pay scheme, and/or (3) denied meal and/or rest breaks at any time during the last 3 years ("Washington Class").

43.     The FLSA Collective Members and the Washington Class Members are collectively referred to as the "Hourly Employees."

44.     AscendTek is a Delaware limited liability company that maintains its headquarters in Milwaukee, Wisconsin.

45.     AscendTek may be served with process by serving its registered agent: C T Corporation System, 711 Capitol Way S Ste 204, Olympia, WA 98501-1267.

COVERAGE UNDER THE FLSA

46.     At all relevant times, AscendTek was an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

47.     At all relevant times, AscendTek was an "enterprise" within the meaning of Section 3(r) of the FLSA. 29 U.S.C. § 203(r).

---

[1] The FLSA Collective excludes the 12 plaintiffs who settled with AscendTek in *Holland, et al. v. AscendTek, LLC, et al.*, No. 1:21-cv-04133 (N.D. Ga.) up to March 2, 2023.

ORIGINAL COMPLAINT - 5

48.     At all relevant times, AscendTek was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as computers, cellphones, medical supplies, and personal protective equipment – that have been moved in or produced for commerce.

49.     At all relevant times, AscendTek has had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

50.     At all relevant times, AscendTek and the Hourly Employees were AscendTek's "employees" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

51.     At all relevant times, AscendTek and the Hourly Employees were engaged in commerce or in the production of goods for commerce.

52.     AscendTek uniformly subjected its Hourly Employees to its jobsite pay scheme.

53.     AscendTek uniformly paid its Hourly Employees per diems that AscendTek failed to include in their regular rates of pay for overtime purposes.

54.     As a result, AscendTek failed to pay Morris and its other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration received—for hours worked in excess 40 in a workweek.

55.     AscendTek's jobsite and per diems pay schemes therefore violate the FLSA. 29 U.S.C. § 207(a) & (e).

FACTS

56.     AscendTek holds itself out as "lead[ing] the way with 5G installations around the country while also providing its foundational services to upgrade, maintain and build cell towers."[2]

57.     To achieve its business objectives, AscendTek hires workers like Morris and the other Hourly Employees.

---

[2] https://ascendtekllc.com/about (last visited April 19, 2024).

ORIGINAL COMPLAINT - 6

58.     AscendTek uniformly classifies these employees as non-exempt and pays them on an hourly basis.

59.     While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

60.     For example, Morris worked for AscendTek as a Foreman in and around Kent, Washington from approximately October 2019 until November 2023.

61.     Morris's primary job duties were repairing, upgrading, and maintaining hardware on telecommunication towers for AscendTek's customers, in accordance with AscendTek's (and its customers') instructions, specifications, policies, and procedures.

62.     AscendTek agreed to pay Morris approximately $38/hour for his first 40 hours worked in a workweek plus "time and a half" overtime for his hours worked in excess of 40 in a workweek.

63.     Morris reported his hours worked to AscendTek through its uniform timeclock system.

64.     AscendTek's records reflect the hours Morris worked each week "on the clock."

65.     Throughout his employment, Morris typically worked 10 hours a day for 5 days a week (or 50 hours a week) "on the clock."

66.     But AscendTek did not pay Morris for all his hours worked.

67.     Instead, throughout his employment, AscendTek required Morris to work "off the clock."

68.     AscendTek subjected him to its uniform, illegal jobsite pay scheme and required him to work "off the clock" before and after his "on the clock" shifts each workday.

69.     Specifically, AscendTek required Morris and to arrive at the AscendTek shop facility each workday, gather and locate necessary tools and equipment (consumable material, cable, hardware, etc.), and receive instructions on the day's job(s) "off the clock," without compensation.

70.     This took approximately 30 to 40 minutes each workday, after Morris's arrival at AscendTek's shop.

ORIGINAL COMPLAINT - 7

71.     Likewise, under its illegal jobsite pay scheme, AscendTek required Morris to complete daily reports describing job progress, issues, and updates and including job photographs, and take and make phone calls "off the clock," without compensation.

72.     Completing daily reports took approximately 35 to 45 minutes each workday.

73.      Completing phone calls could take up to 2 hours and 30 minutes each workday.

74.     Finally, AscendTek required and paid for the cost of training programs that Morris completed.

75.     But AscendTek required Morris to complete these training programs "off the clock" and without compensation.

76.     Morris worked 20 to 25 hours "off the clock" completing AscendTek's required training on an annual basis.

77.     Like Morris, the other Hourly Employees typically work 10 hours a day for 5 days a week (or 50 hours a week) "on the clock."

78.     But just as with Morris, AscendTek required the other Hourly Employees to work off the clock before and after their shifts, pursuant to its jobsite pay scheme.

79.     And just as with Morris, AscendTek required its other Hourly Employees to complete training programs, annually, that would require 20 to 25 hours of work "off the clock" and without compensation.

80.     As a result, AscendTek fails to pay Morris and the other Hourly Employees overtime wages for all hours worked over 40 in a workweek (including those worked "off the clock") in violation of the FLSA and WMWA.

81.     Likewise, AscendTek willfully withheld earned wages from Morris and the other Hourly Employees for work they performed "off the clock," in violation of the WWRA, because it agreed to pay Morris and the other Hourly Employees hourly rates of pay for all time they worked, and AscendTek willfully withheld earned wages from these employees.

82.     AscendTek fails to exercise its duty to ensure Morris and the Hourly Employees were not performing work that AscendTek did not want performed "off the clock."

ORIGINAL COMPLAINT - 8

83.    AscendTek knows Morris and the other Hourly Employees routinely perform work "off the clock" under its jobsite pay scheme because AscendTek expects and requires these employees to do so.

84.    But AscendTek does not pay Morris and the Hourly Employees for their routine "off the clock" work, including those hours worked in excess of 40 hours in a workweek, in violation of the FLSA and Washington wage laws.

85.    Despite accepting the benefits, AscendTek does not pay Morris and the Hourly Employees for the compensable work they performed "off the clock."

86.    Thus, under AscendTek's uniform jobsite pay scheme, Morris and the Hourly Employees are denied overtime pay for the "off the clock" work in workweeks in which they worked in excess of 40 hours in violation of the FLSA and the WMWA.

87.    Additionally, AscendTek denies its Hourly Employees meal and rest periods.

88.    AscendTek simply assumes its Hourly Employees receive *bona fide* meal periods and rest periods each shift they work.

89.    But Morris and the other Hourly Employees do not actually receive *bona fide* meal periods or rest periods.

90.    Instead, AscendTek requires its Hourly Employees to remain on duty throughout their shifts, including during any "meal periods" and "rest periods."

91.    And AscendTek continuously subjects Morris and its other Hourly Employees to work interruptions during their "meal periods" and "rest periods."

92.    Because of these constant work interruptions, the Hourly Employees are not free to engage in personal activities during their "meal periods" and "rest periods."

93.    In other words, the Hourly Employees are not relieved of all their duties during their "meal periods" and "rest periods."

94.    Rather, during their unpaid "meal periods" "rest periods," the Hourly Employees are forced to remain on duty and performing their regular job duties and responsibilities, thus extending the Hourly Employees' workdays.

ORIGINAL COMPLAINT - 9

95.    Similarly, throughout his employment, AscendTek paid Morris according to its uniform, illegal per diem pay scheme.

96.    Specifically, AscendTek paid Morris per diems that it knew should have been, but were not, included in Morris's regular rate of pay for overtime purposes.

97.    AscendTek even described these as "per diem wages":

```
             Y-T-D EARNINGS
Description                   Amount
REGULAR PAY               31832.00
HOLIDAY                     760.00
STD IMPUTED INC              64.00
PAID TIME OFF              2160.00
OVERTIME                 14113.66
PER DIEM WAGES              90.00
BONUS +                    500.00


        Totals:     $49,519.66
```

98.    As a result, AscendTek failed to pay Morris overtime at a rate not less than 1.5 times his regular rate of pay—based on *all* remuneration received—for his hours worked over 40 in a week in violation of the FLSA and WMWA.

99.    Likewise, AscendTek willfully withheld these earned wages from Morris in violation of the WWRA.

100.    And AscendTek subjected the other Hourly Employees to its per diem pay scheme.

101.    Morris worked more than 40 hours in at least one workweek during the 3 years before this Complaint was filed.

102.    For example, during the June 18 to June 24, 2023 pay period, Morris worked 11.1 overtime hours:

ORIGINAL COMPLAINT - 10

| Earnings | Rate | Hours | Amount | YTD |
|---|---|---|---|---|
| Bonus Othe | | | | 450.00 |
| Holiday | | | | 864.00 |
| Overtime | 57.00 | 11.10 | 632.70 | 14,572.62 |
| Per Diem | | | | 0.00 |
| Per Diem | 30.00 | 3.00 | 90.00 | 420.00 |
| PTO | | | | 1,472.00 |
| Regular | 38.00 | 40.00 | 1,520.00 | 37,421.41 |
| STD Imput | | | | 74.89 |
| **Gross Earnings** | | **54.10** | **2,242.70** | **55,274.92** |

103.    Likewise, each Hourly Employee worked more than 40 hours in at least one workweek during the 3 years before this Complaint was filed.

104.    Indeed, Morris and the Hourly Employees typically work 10+ hour shifts for 5 days a workweek.

105.    When Morris and the other Hourly Employees work more than 40 hours in a workweek, AscendTek did not pay them 1.5 times their regular hourly rate for all overtime hours worked because AscendTek fails to include (1) time these employees worked "off the clock" under AscendTek's jobsite pay scheme in the total number of hours worked in a given workweek and/or (2) these employees' per diems in calculating their regular rates of pay for overtime purposes.

106.    Likewise, when Morris and the Washington Class Members work fewer than 40 hours in workweek, AscendTek willfully withholds their "straight time" pay at their regular hourly rates for all hours worked because AscendTek fails to include time these employees work "off the clock," under AscendTek's jobsite pay scheme, in their total number of hours worked, during the workweek.

CLASS & COLLECTIVE ACTION ALLEGATIONS

107.    Morris incorporates all other paragraphs by reference.

108.    Like Morris, the other Hourly Employees are uniformly victimized by AscendTek's uniform, illegal jobsite pay scheme, its per diem pay scheme, and denied meal and rest periods.

ORIGINAL COMPLAINT - 11

109.    Other Hourly Employees worked with Morris and indicated they were paid in the same manner, performed similar work, and were subject to AscendTek's same illegal jobsite pay scheme, per diem pay scheme, and denied meal and rest periods.

110.    Based on his experience, Morris is aware AscendTek's illegal jobsite pay scheme, per diem pay scheme, and denial of meal and rest periods were imposed on the other Hourly Employees.

111.    The putative class of Hourly Employees includes more than 40 members.

112.    Thus, the putative class of Hourly Employees is so numerous that the joining of all class members in one lawsuit is not practical.

113.    The Hourly Employees are similarly situated in the most relevant respects.

114.    Even if their precise job duties and locations might vary, these differences do not matter for the purposes of determining their entitlement to earned wages, overtime wages, and *bona fide* meal and rest periods.

115.    The only relevant inquiry is whether the Hourly Employees were subject to AscendTek's jobsite pay scheme, per diem pay scheme, and/or denied meal and rest periods (which, by definition, they were).

116.    Therefore, the specific job titles or precise job locations of the various Hourly Employees do not prevent class or collective treatment.

117.    Rather, AscendTek's uniform, jobsite pay scheme and per diem pay scheme and denial of meal and rest periods render Morris and the other Hourly Employees similarly situated for the purposes of determining their right to earned wages, overtime wages, and *bona fide* meal and rest periods.

118.    AscendTek's records reflect the number of hours the Hourly Employees worked each week "on the clock."

119.    AscendTek's records also show it paid its Hourly Employees per diems.

120.    And AscendTek's records reflect that it excluded the Hourly Employees' "per diem wages" from their regular rates of pay for overtime purposes.

ORIGINAL COMPLAINT - 12

121.    The back wages owed to Morris and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

122.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to AscendTek's records, and there is no detraction from the common nucleus of liability facts.

123.    Therefore, the issue of damages does not preclude class or collective treatment.

124.    Morris's experiences are therefore typical of the experiences of the other Hourly Employees.

125.    Morris has no interest contrary to, or in conflict with, the other Hourly Employees that would prevent class or collective treatment.

126.    Like each Hourly Employee, Morris has an interest in obtaining the unpaid wages and damages owed under federal and Washington law.

127.    Morris and his counsel will fairly and adequately protect the interests of the other Hourly Employees.

128.    Morris retained counsel with significant experience in litigating complex class and collective actions.

129.    A class and collective action is superior to other available means for the fair and efficient adjudication of this lawsuit.

130.    Absent this class and collective action, many Hourly Employees will not obtain redress for their injuries, and AscendTek will reap the unjust benefits of violating the FLSA and Washington law.

131.    Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

132.    Indeed, the multiplicity of actions would create a hardship to the Hourly Employees, the Court, and AscendTek.

133.    Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

JOSEPHSON DUNLAP, LLP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
(713) 352-1100

134.    The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual members.

135.    Among the common questions of law and fact are:

a.    Whether AscendTek failed to pay the Hourly Employees overtime wages for all overtime hours worked in violation of the FLSA and WMWA;

b.    Whether AscendTek willfully withheld earned wages from its Hourly Employees in violation of the WWRA;

c.    Whether AscendTek failed to provide its Hourly Employees with *bona fide* meal and rest periods in violation of the WIWA and related Washington DOLI regulations;

d.    Whether AscendTek paid its Hourly Employees per diems that it excluded from their regular rates of pay for overtime purposes;

e.    Whether AscendTek failed to pay its Hourly Employees overtime at rates not less than 1.5 times their regular rates of pay—based on *all* remuneration received—for hours worked after 40 in a week in violation of the FLSA and WMWA;

f.    Whether AscendTek's decision not to pay its Hourly Employees overtime wages for all overtime hours worked was made in good faith;

g.    Whether AscendTek's decision to withhold earned wages from its Hourly Employees was made in good faith;

h.    Whether AscendTek's decision not to pay its Hourly Employees overtime at the proper premium rate was made in good faith; and

i.    Whether AscendTek's violations were willful.

136.    Morris knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

137.    AscendTek's illegal jobsite pay scheme and per diem pay scheme deprived Morris and the other Hourly Employees of earned wages for all hours worked and overtime wages at the proper premium rate for all hours worked after 40 in a workweek, which they are owed under federal and Washington law.

ORIGINAL COMPLAINT - 14

138.    AscendTek's denial of meal and rest periods, which they are entitled to under WIWA and DOLI, extended the Hourly Employees' workday, entitling them to compensation for that time.

139.    There are many similarly situated Hourly Employees who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

140.    The similarly situated Hourly Employees are known to AscendTek, are readily identifiable, and can be located through AscendTek's business and personnel records.

### AscendTek's Violations Were Willful and/or Done in Reckless Disregard of Federal & Washington Law

141.    Morris incorporates all other paragraphs by reference.

142.    AscendTek knew it was subject to the FLSA's and WMWA's overtime provisions.

143.    AscendTek knew the FLSA and WMWA required it to pay non-exempt employees, including the Hourly Employees, overtime at rates not less than 1.5 times their regular rates of pay— based on *all* remuneration received—for all hours worked after 40 in a workweek.

144.    AscendTek knew it was subject to the WWRA.

145.    AscendTek knew the WWRA prohibited it from willfully withholding earned wages from employees, including the Hourly Employees.

146.    AscendTek knew each Hourly Employee worked more than 40 hours in at least one workweek during relevant period(s).

147.    AscendTek knew its Hourly Employees were non-exempt employees entitled to overtime.

148.    AscendTek knew it paid its Hourly Employees on an hourly basis.

149.    AscendTek knew it paid its Hourly Employees per diems.

150.    AscendTek knew these per diems constituted part of its Hourly Employees' wages and compensation.

151.    AscendTek knew these per diems should have been included in its Hourly Employees' regular rates of pay for overtime purposes.

ORIGINAL COMPLAINT - 15

JOSEPHSON DUNLAP, LLP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
(713) 352-1100

152. Nonetheless, AscendTek excluded its Hourly Employees' per diems from their regular rates of pay for overtime purposes.

153. AscendTek knew it was subject to the WIWA and the Washington DOLI regulations.

154. AscendTek knew the WIWA and the Washington DOLI regulations required it to provide employees, including the Hourly Employees, a *bona fide*, duty-free 10-minute rest period for every 4 hours worked.

155. AscendTek knew the WIWA and the Washington DOLI regulations required it to provide employees, including the Hourly Employees, a *bona fide*, duty-free, and uninterrupted 30-minute meal period for every 5 hours worked.

156. AscendTek knew its Hourly Employees did not waive their meal periods.

157. Nonetheless, AscendTek failed to provide or make available *bona fide*, duty-free meal and rest periods to its Hourly Employees.

158. AscendTek knew its Hourly Employees did not actually receive or have the opportunity to take *bona fide* meal or rest periods.

159. AscendTek knew the FLSA and Washington law required it to pay its employees, including the Hourly Employees, for all hours they performed compensable work.

160. AscendTek knew it had a duty to ensure its Hourly Employees were not performing work "off the clock" (without pay).

161. AscendTek knew its Hourly Employees regularly performed their regular job duties "off the clock" for AscendTek's predominant benefit before and after their shifts "off the clock."

162. Thus, AscendTek knew it requested, suffered, permitted, or allowed its Hourly Employees to work "off the clock."

163. In other words, AscendTek knew, should have known, or recklessly disregarded whether its Hourly Employees performed compensable work "off the clock" under its jobsite pay scheme.

ORIGINAL COMPLAINT - 16

JOSEPHSON DUNLAP, LLP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
(713) 352-1100

164. Nonetheless, AscendTek did not pay its Hourly Employees for the compensable work they performed "off the clock" under its jobsite pay scheme.

165. AscendTek knew, should have known, or recklessly disregarded whether its conduct described in this Complaint violated the FLSA and Washington law.

166. Indeed, AscendTek has been sued previously by employees for failing to pay earned wages and overtime in violation of federal wage and hour laws. *See, e.g., Holland, et al. v. AscendTek, LLC, et al.*, No. 1:21-cv-04133 (N.D. Ga.).

167. AscendTek knowingly, willfully, and/or in recklessly disregard carried out its illegal employment policies that systematically deprived its Hourly Employees of *bona fide* meal and rest periods, earned wages, and premium overtime pay in violation of federal and Washington law.

## AscendTek's Violations Were Not Done In Good Faith

168. Morris incorporates all other paragraphs by reference.

169. AscendTek did not seek the advice of counsel regarding its jobsite pay scheme.

170. AscendTek did not receive advice from counsel regarding its jobsite pay scheme.

171. AscendTek did not rely on the advice of counsel in imposing jobsite pay scheme on its Hourly Employees.

172. AscendTek's decision to impose its jobsite pay scheme on the Hourly Employees was neither reasonable nor made in good faith.

173. AscendTek's decision not to pay its Hourly Employees for all hours worked under its jobsite pay scheme was neither reasonable nor made in good faith.

174. AscendTek did not investigate whether it was required to include its Hourly Employees' per diems in their regular rates of pay for overtime purposes.

175. AscendTek did not seek the advice of counsel regarding excluding its Hourly Employees' per diems from their regular rates of pay for overtime purposes.

176. AscendTek did not receive advice from counsel regarding excluding its Hourly Employees' per diems from their regular rates of pay for overtime purposes.

JOSEPHSON DUNLAP, LLP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
(713) 352-1100

177.    AscendTek did not rely on the advice of counsel in deciding to exclude its Hourly Employees' per diems from their regular rates of pay for overtime purposes.

178.    AscendTek's decision to exclude its Hourly Employees' per diems from their regular rates of pay for overtime purposes was neither reasonable nor made in good faith.

179.    AscendTek's decision not to pay its Hourly Employees overtime wages at the proper premium rate was neither reasonable nor made in good faith.

180.    AscendTek did not seek the advice of counsel regarding its meal and rest period policies.

181.    AscendTek did not receive advice from counsel regarding its meal and rest period policies.

182.    AscendTek did not rely on the advice of counsel in imposing its meal and rest period policies on its Hourly Employees.

183.    AscendTek knew it failed to provide or make available its Hourly Employees with *bona fide*, duty-free meal and rest periods.

184.    AscendTek knew its Hourly Employees did not actually receive or have the opportunity to take *bona fide*, duty-free meal and rest periods.

185.    AscendTek's decision not to provide or make available to its Hourly Employees with *bona fide* meal or rest periods was neither reasonable nor made in good faith.

186.    AscendTek knew it failed to provide or make available its Hourly Employees with *bona fide*, duty-free meal and rest periods.

187.    AscendTek's decision not to pay its Hourly Employees overtime wages for all overtime hours worked was neither reasonable nor made in good faith.

188.    AscendTek's decision to withhold earned wages from its Hourly Employee was neither reasonable nor made in good faith.

ORIGINAL COMPLAINT - 18

COUNT I
FAILURE TO PAY OVERTIME UNDER THE FLSA
(FLSA COLLECTIVE)

189.    Morris incorporates all other paragraphs by reference.

190.    Morris brings his FLSA claim as a collective action on behalf of himself and the other FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

191.    AscendTek violated, and is violating, the FLSA by employing non-exempt employees (Morris and the other FLSA Collective Members) in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay—based on *all* remuneration received—for all their hours worked after 40 in a workweek, including those worked "off the clock."

192.    AscendTek's unlawful conduct harmed Morris and the other FLSA Collective Members by depriving them of the overtime wages they are owed.

193.    Accordingly, AscendTek owes Morris and the other FLSA Collective Members the difference between the wages actually paid and the proper overtime wages earned.

194.    Because AscendTek knew, or showed reckless disregard for whether, its jobsite pay scheme and per diem pay scheme violated the FLSA, AscendTek owes these wages for at least the past 3 years.

195.    AscendTek is also liable to Morris and the other FLSA Collective Members for an additional amount equal to all their unpaid wages as liquidated damages.

196.    Finally, Morris and the other FLSA Collective Members are entitled to recover all reasonable attorney's fees and costs incurred in this action.

COUNT II
FAILURE TO PAY OVERTIME UNDER THE WMWA
(WASHINGTON CLASS)

197.    Morris incorporates all other paragraphs by reference.

198.    Morris brings his WMWA claim as a class action on behalf of himself and the other Washington Class Members pursuant to FED. R. CIV. P. 23.

ORIGINAL COMPLAINT - 19

199.    AscendTek's conduct violates the WMWA (RCW 49.46, *et seq.*).

200.    At all relevant times, AscendTek was subject to the WMWA because AscendTek was (and is) an "employer" within the meaning of the WMWA. *See* RCW 49.46.010(4); *see also* RCW 49.48.082(6).

201.    At all relevant times, AscendTek employed Morris and the other Washington Class Members as its covered "employees" within the meaning of the WMWA. *See* RCW 49.46.010(3); *see also* RCW 49.48.082(5)(a).

202.    The WMWA requires employers, like AscendTek, to pay non-exempt employees, including Morris and the other Washington Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay—based on *all* remuneration received—for all hours worked after 40 in a workweek. RCW 49.46.130.

203.    Morris and the other Washington Class Members are entitled to overtime pay under the WMWA.

204.    AscendTek violated, and is violating, the WMWA by failing to pay non-exempt employees (Morris and the other Washington Class Members) overtime wages at rates not less than 1.5 times their regular rates of pay—based on *all* remuneration received—for all hours worked after 40 in a workweek, including those worked "off the clock." *See* RCW 49.46.130.

205.    AscendTek's unlawful conduct harmed Morris and the other Washington Class Members by depriving them of the overtime wages they are owed under Washington law.

206.    Accordingly, AscendTek owes Morris and the other Washington Class Members the difference between the wages paid and the proper overtime wages earned (RCW 49.46.090) plus pre-judgment interest at a rate of 12% per annum (RCW 19.52.020).

207.    Finally, Morris and the other Washington Class Members are also entitled to recover their reasonable attorney's fees and costs incurred in this action. *See* RCW 49.46.30.

JOSEPHSON DUNLAP, LLP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
(713) 352-1100

1
2

<u>COUNT III</u>
WILLFULLY WITHHOLDING EARNED WAGES UNDER THE WWRA
(WASHINGTON CLASS)

3      208.    Morris incorporates all other paragraphs by reference.

4      209.    Morris brings his WWRA claim as a class action on behalf of himself and the other

5    Washington Class Members pursuant to FED. R. CIV. P. 23.

6      210.    AscendTek's conduct violates the WWRA (RCW 49.52, *et seq.*).

7      211.    At all relevant times, AscendTek was subject to the WWRA because AscendTek was

8    (and is) an "employer" within the meaning of the WWRA. *See* RCW 49.46.010(4); *see also* RCW

9    49.48.082(6).

10     212.    At all relevant times, AscendTek employed Morris and the other Washington Class

11   Members as covered "employees" within the meaning of the WWRA. *See* RCW 49.12.005(4); *see also*

12   RCW 49.48.082(5)(b).

13     213.    The WWRA prohibits employers, like AscendTek, from depriving employees,

14   including Morris and the other Washington Class Members, of "any part of his or her wages" and

15   from "pay[ing] any employee a lower wage than the wage such employer is obligated to pay such

16   employee by any statute, ordinance or contract." RCW 49.52.050.

17     214.    AscendTek violated, and is violating, the WWRA by willfully withholding earned

18   overtime wages from Morris and the other Washington Class Members, which federal and

19   Washington law (*e.g.*, the FLSA and the WMWA) obligated AscendTek to pay at rates not less than

20   1.5 times their regular rates of pay—based on *all* remuneration received. *See* RCW 49.52.050.

21     215.    AscendTek's unlawful conduct harmed Morris and the other Washington Class

22   Members by willfully withholding earned wages (including earned overtime wages at the proper

23   premium rate) from these employees which they are owed under Washington law.

24     216.    Accordingly, AscendTek owes Morris and the other Washington Class Members their

25   willfully withheld earned wages plus exemplary damages in an amount equal to 2 times their willfully

26
27

JOSEPHSON DUNLAP, LLP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
(713) 352-1100

1    withheld wages (RCW 49.52.070), as well as pre-judgment interest at a rate of 12% per annum (RCW

2    19.52.020).

3          217.    Finally, Morris and the other Washington Class Members are also entitled to recover

4    their reasonable attorney's fees and costs incurred in this action. *See* RCW 49.52.070.

COUNT IV

FAILURE TO PROVIDE *BONA FIDE* MEAL AND REST PERIODS UNDER THE WIWA
(WASHINGTON CLASS)

7          218.    Morris incorporates all other paragraphs by reference.

8          219.    Morris brings his meal and rest period claims under the WIWA and related

Washington DOLI regulations as a class action on behalf of himself and the other Washington Class

Members pursuant to FED. R. CIV. P. 23.

11          220.    AscendTek's conduct violates the WIWA's (and the related Washington DOLI

regulations') meal and rest period requirements (RW 49.12, *et seq.;* WAC 296-126-092).

13          221.    At all relevant times, AscendTek was subject to the WIWA and related Washington

DOLI regulations because AscendTek was (and is) an "employer" within the meaning of the WIWA

and the Washington DOLI regulations. *See* RCW 49.12.005(3); WAC 296-126-002(1).

16          222.    At all relevant times AscendTek employed Morris and the other Washington Class

Members as covered "employees" within the meaning of the WIWA and the Washington DOLI

regulations. *See* RCW 49.12.005(4); WAC 296-126-002(2).

19          223.    The WIWA prohibits employers, like AscendTek, from employing employees,

including Morris and the other Washington Class Members, under conditions of labor detrimental to

their health. RCW 49.12.020.

22          224.    The Washington DOLI regulations require employers, like AscendTek, to provide

employees, including Morris and the other Washington Class Members, meal periods of at least 30

minutes, which commence no less than 2 hours nor more than 5 hours from the beginning of the

employee's shift. WAC 296-126-092(1).

JOSEPHSON DUNLAP, LLP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
(713) 352-1100

225.    The Washington DOLI regulations also require employers, like AscendTek, to provide employees, including Morris and the other Washington Class Members, rest periods of at least 10 minutes for every 4 hours of working time. WAC 296-126-092(4).

226.    The Washington DOLI regulations further prohibit employers, like AscendTek, from requiring employees, including Morris and the other Washington Class Members, to work more than 3 hours without a rest period. WAC 296-126-092(4).

227.    Washington law also requires employers, like AscendTek, to compensate employees, including Morris and the other Washington Class Members for missed meal and rest periods. *See, e.g., Chavez v. Our Lady of Lourdes Hosp. at Pasco*, 190 Wn.2d 507, 517-19, 415 P.3d 224 (2018); *Wingert v. Yellow Freight Systems, Inc.*, 50 P.3d 256 (2002); *Pellino v. Brinks Inc.*, 164 Wn. App. 668, 690-93, 267 P.3d 383 (2011).

228.    Throughout the relevant period, AscendTek expected and required Morris and the other Washington Class Members to remain on duty and perform compensable work throughout their shifts, including during their meal and rest periods.

229.    Morris and the other Washington Class Members were not relieved of all duties during any attempted meal and rest periods but instead were subject to constant work interruptions.

230.    Thus, AscendTek violated, is violating, the WIWA and related Washington DOLI regulations by failing to provide Morris and the other Washington Class Members *bona fide* meal and rest periods. *See* RCW 49.12.020; WAC 296-126-092.

231.    AscendTek's unlawful conduct harmed Morris and the other Washington Class Members by depriving them of the *bona fide* meal and rest periods they are owed under Washington law.

232.    Accordingly, Morris and the Washington Class Members are entitled to recover their wages for their missed meal and rest periods, penalties in an amount not less than $25 nor more than $1,000 per violation (WAC 296-126-226; RCW 49.12.170) and pre-judgment interest at a rate of 12% per annum (RCW 19.52.020).

ORIGINAL COMPLAINT - 23

233.    Finally, Morris and the other Washington Class Members are also entitled to recover their reasonable attorney's fees and costs incurred in this action. *See* RCW 49.12.150.

## JURY DEMAND

234.    Morris demands a trial by jury on all Counts.

## RELIEF SOUGHT

WHEREFORE, Morris, individually and on behalf of the Hourly Employees, seeks the following relief:

a.    An Order designating this lawsuit as a collective action and authorizing notice to the Hourly Employees allowing them to join this action by filing a written notice of consent;

b.    An Order certifying this lawsuit as a class action pursuant to FED. R. CIV. P. 23;

c.    An Order appointing Morris and his counsel to represent the interests of the Hourly Employees;

d.    An Order finding AscendTek liable to Morris and the other FLSA Collective Members for all unpaid overtime wages owed under the FLSA, plus liquidated damages in an amount equal to their unpaid wages;

e.    An Order finding AscendTek liable to Morris and the other Washington Class Members for failing to provide them with *bona fide* meal and rest periods plus all available statutory compensation and penalties;

f.    An Order finding AscendTek liable to Morris and the other Washington Class Members for all unpaid overtime wages owed under the WMWA;

g.    An Order finding AscendTek liable to Morris and the other Washington Class Members for all willfully withheld wages owed under the WWRA, plus exemplary damages in an amount equal to 2 times their willfully withheld wages;

h.    An Order awarding attorney's fees, costs, and expenses;

ORIGINAL COMPLAINT - 24

JOSEPHSON DUNLAP, LLP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
(713) 352-1100

i.  A Judgment against AscendTek awarding Morris and the other Hourly Employees all their withheld wages, unpaid overtime, liquidated damages, exemplary damages, statutory damages, attorney's fees, costs, expenses, and any other penalties available under the FLSA, WMWA, WWRA, and WIWA;

j.  An award of pre- and post-judgment interest on all amounts awarded at the highest rate allowable by law; and

k.  All such other and further relief as may be necessary and appropriate.

ORIGINAL COMPLAINT - 25

Date: April 24, 2024

Respectfully submitted,

FRANK FREED SUBIT & THOMAS, LLP

By: /s/ Michael Subit
    Michael C. Subit, WSBA #29189
    msubit@frankfreed.com
    705 Second Ave., Suite 1200
    Seattle, Washington 98104
    Telephone: 206.682.6711

JOSEPHSON DUNLAP, LLP

By: /s/ Michael Josephson
    Michael A. Josephson*
    mjosephson@mybackwages.com
    Andrew W. Dunlap*
    adunlap@mybackwages.com
    11 Greenway Plaza, Suite 3050
    Houston, Texas 77046
    Telephone: 713.352.1100

BRUCKNER BURCH, PLLC

By: /s/ Rex Burch
    Richard J. (Rex) Burch*
    rburch@brucknerburch.com
    11 Greenway Plaza, Suite 3025
    Houston, Texas 77046
    Telephone: 713.877.8788

ANDERSON ALEXANDER, PLLC

By: /s/ Clif Alexander
    William C. (Clif) Alexander*
    clif@a2xlaw.com
    Austin W. Anderson*
    austin@a2xlaw.com
    101 N. Shoreline Blvd., Suite 610
    Corpus Christi, Texas 78401
    Telephone: 361.452.1279

*Pro Hac Vice Applications Forthcoming

ATTORNEYS FOR MORRIS &
THE HOURLY EMPLOYEES

JOSEPHSON DUNLAP, LLP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
(713) 352-1100