UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOSHUA MORRIS et al., <br><br>                Plaintiffs, <br>     v. <br><br>ASCENDTEK, LLC, <br><br>                Defendant. | CASE NO. C24-0565-KKE <br><br>ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CONDITIONAL CERTIFICATION AND COURT-AUTHORIZED NOTICE |

Plaintiff Joshua Morris sues AscendTek, LLC ("AscendTek") for federal and state wage law violations. Morris moves to conditionally certify his Fair Labor Standards Act ("FLSA") collective action. The Court finds sufficient evidence that the potential opt-in plaintiffs are similarly situated to Morris, and the Court certifies the collective action. The Court also orders AscendTek to provide identifying information for potential opt-in plaintiffs, but the Court does not authorize the draft notices provided by Morris.

**I. BACKGROUND**

AscendTek constructs and maintains wireless communication towers. Dkt. No. 35-1 ¶ 3. Morris worked for AscendTek as an hourly, non-exempt, foreman from October 2019 until November 2023. Dkt. No. 1 ¶¶ 26, 27, 60. Morris alleges that, during his employment, AscendTek violated the FLSA in two ways. First, under Morris's alleged "jobsite pay scheme," AscendTek required Morris to work "off the clock" before clocking in, after clocking out, and during meal

and rest breaks. *Id.* ¶¶ 7–9, 12, 28, 67–73 78–79. Specifically, AscendTek allegedly required Morris to clock in only upon leaving the AscendTek shop for the jobsite even though Morris had to complete tasks at the shop before departing for the jobsite. *Id.* ¶ 7. AscendTek also allegedly required Morris to clock out upon return to the AscendTek shop even though Morris had to complete additional tasks after clocking out. *Id.* ¶ 8. Second, under Morris's alleged "per diem pay scheme," AscendTek allegedly did not pay Morris's overtime at the proper rate, improperly excluding "per diems" from the rate calculation. *Id.* ¶¶ 13–15, 30, 95–98. Morris argues these acts violate the FLSA by employing workers "for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay—based on *all* remuneration received—for all their hours worked after 40 in a workweek, including those worked 'off the clock.'" *Id.* ¶ 191.[1]

Morris alleges that AscendTek's two FLSA violations are applied "uniformly" to all hourly employees. Dkt. No. 1 ¶¶ 33–38, 52–55, 108–110. Morris further alleges that "[w]hile exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work." *Id.* ¶ 59. Accordingly, Morris brought this collective FLSA action for: "All hourly, non-exempt AscendTek employees who were subject to AscendTek's (1) jobsite pay scheme and/or (2) per diem pay scheme at any time during the past 3 years[.]" *Id.* ¶ 40.[2]

Since bringing this lawsuit in April 2024 (Dkt. No. 1), Morris has filed 23 notices of consent wherein individuals consent to make a claim against AscendTek "to pursue [the] claims of unpaid overtime during the time [they] worked at the company." Dkt. Nos. 4-1, 8-1, 10-1, 25-1,

---

[1] Morris also alleges he was required to complete various annual trainings but was not paid for this time. Dkt. No. 1 ¶ 75. These allegations are not part of either defined scheme or otherwise mentioned in the motion to certify the collective action, so are not addressed.

[2] While not relevant to this motion, Morris also seeks to represent a Washington class under Federal Rule of Civil Procedure 23. Dkt. No. 1 ¶¶ 41–42, 197–233.

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CONDITIONAL CERTIFICATION AND COURT-AUTHORIZED NOTICE - 2

26-1, 31-1, 32-1, 33-1, 37-1.  On December 2, 2024, Morris moved the Court to conditionally certify the FLSA collective; to order AscendTek to produce contact information for hourly employees; and to approve notices to be mailed, emailed, and texted to AscendTek's hourly employees for the last three years.  Dkt. No. 34.  In support of this motion, Morris provided his own declaration as a former foreman with AscendTek's Oregon and Washington offices.  Dkt. No. 34-1.  Morris also submitted the declaration of Sonny Moore, another former foreman with AscendTek's Oregon and Washington offices (Dkt. No. 34-2), and Ismael Perez Mandieta, a former tower tech top hand who "worked for AscendTek in Iowa, Illinois, Wisconsin, and Indiana" (Dkt. No. 34-3).  All three declarants attest they performed "off the clock" work before clocking in (Dkt. No. 34-1 ¶¶ 8–9, Dkt. No. 34-2 ¶¶ 8–10, Dkt. No. 34-3 ¶¶ 7–10), after clocking out (Dkt. No. 34-1 ¶¶ 10–11, 18; Dkt. No. 34-2 ¶ 17; Dkt. No. 34-3 ¶ 17), and during meal and rest breaks (Dkt. No. 34-1 ¶¶ 13–14, Dkt. No. 34-2 ¶¶ 12–13, Dkt. No. 34-3 ¶¶ 12–13); and that they were paid a "per diem" that was not included in their overtime rate calculation (Dkt. No. 34-1 ¶¶ 15–16, Dkt. No. 34-2 ¶¶ 14–15, Dkt. No. 34-3 ¶¶ 14–15).  Further, each declarant attests that based on their experience, observations, and conversations with other AscendTek workers, "other Hourly Employees who worked for AscendTek were subject to the same AscendTek policies…and as such, were not paid for all hours worked regardless of job position, job location, or other individualized factors."  Dkt. No. 34-1 ¶ 19, Dkt. No. 34-2 ¶ 18, Dkt. No. 34-3 ¶ 18.

AscendTek opposes the motion to certify the FLSA collective, but does not address Morris's request for information or approval of the mail, email, or text notices.  Dkt. No. 35.  Morris replied.  Dkt. No. 36.  Neither party requested oral argument, and the matter is ripe for the Court's consideration.

## II. ANALYSIS

The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1367 because the case involves a federal question under the FLSA and state claims arising from the same facts. 29 U.S.C. § 216(b).

### A. Legal Standard to Certify a Collective Action.

Under the FLSA, a plaintiff may bring a collective action on behalf of himself and "similarly situated" employees. 29 U.S.C. § 216(b). The decision as to whether a collective action is appropriate lies within the court's discretion. *Bollinger v. Residential Capital, LLC*, 761 F. Supp. 2d 1114, 1119 (W.D. Wash. 2011). The Ninth Circuit has held that plaintiffs may litigate jointly under the statute if they "(1) claim a violation of the FLSA, (2) are 'similarly situated,' and (3) affirmatively opt in to the joint litigation, in writing." *Campbell v. City of L.A.*, 903 F.3d 1090, 1100 (9th Cir. 2018).

In the Ninth Circuit, certification of a collective action is generally a two-step process. *Saravia v. Dynamex, Inc.*, 310 F.R.D. 412, 422 (N.D. Cal. 2015). At the first step, the issue is whether plaintiffs have identified other employees who are similarly situated to them, such that they are potential opt-in plaintiffs and should be given notice of the action. *Heath v. Google Inc.*, 215 F. Supp. 3d 844, 850 (N.D. Cal. 2016). The second step of the analysis occurs when discovery is complete and the case is ready to be tried. *Id.* at 855. The party opposing collective certification may then move for decertification, and the court engages in a more searching review. *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 466–67 (N.D. Cal. 2004). The Court's analysis here is under the first step of the process—determining whether Morris has identified employees who are similarly situated to him.

Employees "are similarly situated [under the FLSA]…to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." *Campbell*, 903 F.3d at 1117.

Although the named plaintiff bears the burden of showing substantial similarity at the notice stage, discovery is not yet complete, and courts must rely on the pleadings and affidavits submitted by the parties. *Bollinger*, 761 F. Supp. 2d at 1119. Because the "sole consequence of conditional certification is the sending of court-approved written notice to employees", *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013), little more is required than "substantial allegations, supported by declarations or discovery, that the putative class members were together the victims of a single decision, policy, or plan and a showing that plaintiffs are generally comparable to those they seek to represent." *Heath*, 215 F. Supp. 3d at 850 (internal quotation marks omitted). The standard is lenient, and "is loosely akin to the plausibility standard, commensurate with the stage of the proceedings." *Campbell,* 903 F.3d at 1109. If a plaintiff presents a reasonable evidentiary basis for their claims of collective injury, conditional certification is the usual result. *Bollinger*, 761 F. Supp. 2d at 1119.

**B.    Collective Action Is Appropriate.**

Morris seeks conditional certification for a collective action of: "All hourly, non-exempt AscendTek employees who were subject to AscendTek's (1) jobsite pay scheme and/or (2) per diem pay scheme at any time during the past 3 years." Dkt. No. 34 at 5, *see also* Dkt. No. 1 ¶ 40. Because this definition includes defined terms from other sections of the complaint, Morris clarifies in its reply that the conditional collective includes hourly, non-exempt, employees of AscendTek "who drove to a job site to perform their work duties and/or any employee who received any 'per diem' as part of their compensation…for the last three years." Dkt. No. 36 at 8 (quoting Dkt. No. 35 at 4–5). Morris must demonstrate that these employees were subject to the same practice regarding "off the clock" pay and the same practice regarding per diem overtime rate calculations.

Morris's allegations and declarations adequately establish that this subset of AscendTek employees is similarly situated such that a conditional collective action is proper. Specifically, the declarants, working in two different positions, across at least three offices, attest they were required to perform "off the clock" work at the AscendTek "shops" before and after leaving the jobsites. Dkt. Nos. 34-1–34-3. Each declarant further attests that they worked through breaks, accruing additional "off the clock" time. *Id.* These declarations also allege that per diem payments were not included in employees' overtime rates. *Id.* These allegations appear to be corroborated by Morris's payment records (Dkt. No. 34-6), and AscendTek's employee handbook section on per diem payments (Dkt. No. 35-1 at 9–12). This evidence sufficiently alleges a consistent practice applicable to the potential opt-in plaintiffs for purposes of conditional certification. *See Campbell*, 903 F.3d at 1102 ("[C]redible allegations" of a common policy "should suffice to make [employees] similarly situated"). Courts in this district have found similar evidence sufficient to conditionally certify a collective action. *See, e.g.*, *Chetwood v. T-Mobile USA, Inc.*, No. 19-CV-458-RSL, 2020 WL 1689730, at *3 (W.D. Wash. Apr. 7, 2020) (certifying conditional collective action for "off the clock" work based on three declarations) (collecting cases).

AscendTek's arguments to the contrary are unavailing. First, AscendTek argues that its employee handbook prohibits "off the clock" work. Dkt. No. 35 at 5–7. The existence of a lawful company policy does not undermine Morris's allegations that a separate, unwritten policy required "off the clock" work. *See Chetwood*, 2020 WL 1689730, at *3 (rejecting defendant's opposition to conditional certification that argues "its wage policies are fully compliant with FLSA"). This is because at this stage of the case, the Court does not resolve factual disputes, but rather evaluates only whether Plaintiff has raised "plausible allegations" such that other AscendTek employees "should be afforded notice of this litigation and an opportunity to opt in if they agree that they have been injured by defendant's wage policies." *Id.*

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CONDITIONAL CERTIFICATION AND COURT-AUTHORIZED NOTICE - 6

Second, AscendTek claims Morris fails to show "a common injury." Dkt. No. 35 at 5. But AscendTek misunderstands the analysis: "Nothing in the statute or applicable caselaw requires complete uniformity of injury—the focus is on the unifying plan." *Khadera v. ABM Indus. Inc.*, 701 F. Supp. 2d 1190, 1194 (W.D. Wash. 2010). Morris has alleged a unifying plan for both "off the clock" time and inaccurate overtime rate calculations.

Third, AscendTek argues that a collective action is inappropriate because the proposed opt-in plaintiffs used different timekeeping methods (Dkt. No. 35 at 7), had different managers (*id.* at 8–9), and held different positions and job duties (*id.* at 10–11). General differences amongst the proposed opt-in plaintiffs do not undermine a collective action. *See Campbell*, 903 F.3d at 1117 (rejecting approach that "treats difference as disqualifying, rather than [the adopted approach] that treats the requisite kind of similarity as the basis for allowing partially distinct cases to proceed together"). None of the differences highlighted by AscendTek go to the alleged practice of requiring "off the clock" work or calculations of per diem payments in overtime rates.

That potential opt-in plaintiffs used different timekeeping software systems (Dkt. No. 35-1 ¶¶ 9–12) or had different human resources managers (*id.* ¶¶ 4–8), does not undermine the collective action when AscendTek does not argue either of these differences led to different expectations for recording time or overtime calculations. Likewise, AscendTek's argument that different foremen "influenced" how employees recorded their time such that collective action is not appropriate (Dkt. No. 35 at 11) is undermined by the declarations of two foremen attesting to a consistent timekeeping policy (Dkt. Nos. 34-1, 34-2) and AscendTek's own evidence that its timekeeping policy was companywide (Dkt. No. 35-1 ¶ 13).

AscendTek's attempt to differentiate between the duties of declarants Morris, Moore, and Manieta as "lead positions" and potential opt-in plaintiffs that worked as "other crew members" does not pass muster. Dkt. No. 35 at 10. First, Morris provides declarations of two foremen

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CONDITIONAL CERTIFICATION AND COURT-AUTHORIZED NOTICE - 7

(Morris and Moore) and one "top hand" (Manieta). Dkt. Nos. 34-1–34-3. There is no evidence before the Court that a "top hand" is a "lead position" or different from other crew members in terms of off-the-clock time or per diem payments. *See* Dkt. No. 35-1 ¶ 17 (only identifying foremen as having "additional job duties of making calls and completing paperwork that other crew members did not perform"). Thus, Manieta's declaration as a top hand supports the argument that potential opt-in plaintiffs, not just foremen, are similarly situated to Morris. Dkt. No. 34-3. Second, even if only foremen had to make calls and complete paperwork, the evidence shows that all potential opt-in plaintiffs had to perform the other "off the clock" tasks, including vehicle maintenance, loading materials, gathering tools, or receiving daily instruction. Dkt. No. 34-1 ¶ 9. Any differences in job duties between potential opt-in plaintiffs and declarants do not undermine the uniform practices alleged here.

Lastly, none of the cases relied on by AscendTek where conditional certification is denied apply here. *See* Dkt. No. 35 at 11. Morris provides declarations asserting that the claimed practices exist across offices and impact various positions and are not due to one-off or individualized factual scenarios. *Contra Hinojos v. The Home Depot*, No. 2:06–CV–00108, 2006 WL 3712944, at *1 (D. Nev. Dec. 1, 2006) (plaintiff provided affidavits from one state and admitted lack of personal knowledge about other locations); *Burk v. Contemporary Home Services, Inc.*, No. C06-1459RSM, 2007 WL 2220279, at *4 (W.D. Wash. Aug. 1, 2007) (plaintiff provided no declaration to support conditional certification); *Castle v. Wells Fargo Financial, Inc.*, No. C06-4347SI, 2008 WL 495705, at *5 (N.D. Cal Feb. 20, 2008) (plaintiffs' declarations included various individual explanations for alleged FLSA violations).

Accordingly, the Court grants Morris's motion and conditionally certifies a collective action of: All hourly, non-exempt AscendTek employees who (1) drove to a job site to perform

their work duties; and/or (2) received any "per diem" as part of their compensation for the last three years.

C.  **AscendTek Shall Provide Employee Information.**

Morris seeks the "names, current or last known addresses, current or last known e-mail address(es) (non-company address if applicable), phone numbers, and dates of employment" of the conditionally certified collective. Dkt. No. 34-7. AscendTek does not object or otherwise acknowledge this request. *See* Dkt. No. 35. Accordingly, the Court grants this request for information.

D.  **The Draft Notices Are Not Approved.**

Having determined that conditional certification is appropriate, "the court must examine Plaintiff's proposed authorized notice of a collective action and ensure it is 'timely, accurate, and informative.'" *Randall v. Integrated Commc'n Serv., Inc.*, No. C20-5438JLR, 2021 WL 2328373, at *3 (W.D. Wash. June 8, 2021) (quoting *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 172 (1989)). Morris submits draft notices to be mailed, e-mailed, and texted to the conditionally certified class. Dkt. Nos. 34-4, 34-5. AscendTek does not object to (or otherwise address) these notices. Dkt. No. 35. However, the Court finds at least four issues with the notices.

First, the draft notices inaccurately state that the current or former employees "were not paid for certain hours worked" (Dkt. No. 34-5 at 2) or that the per diem "was not properly calculated into your overtime rate" (Dkt. No. 34-4 at 2). These statements go to the merits of the case which have not been decided and, thus, are likely to confuse the potential opt-in plaintiffs. *Hubbard v. Cnty. of Los Angeles*, No. CV 23-3541 PA (RAOX), 2023 WL 11884620, at *4 (C.D. Cal. Oct. 23, 2023) ("To that end, trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action." (quoting *Hoffmann-La Roche*, 493 U.S. at 174)).

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CONDITIONAL CERTIFICATION AND COURT-AUTHORIZED NOTICE - 9

Second, "the notice and consent forms should be modified to state that participating plaintiffs may retain their own counsel." *Carlson v. United Nat. Foods, Inc.*, No. C20-5476-JCC, 2021 WL 3616786, at *5 (W.D. Wash. Aug. 14, 2021) (cleaned up).

Third, the notices state, "Your rights may be affected by the outcome of this lawsuit." Dkt. No. 34-5 at 2, *see also* Dkt. No. 34-4 at 4 ("If you decide not to join you will not recover any unpaid overtime compensation from AscendTek in this lawsuit."). These statements are misleading because doing nothing does not affect the notified individuals of their right to sue on their own. *See Bazzell v. Body Contour Centers, LLC*, No. C16-0202JLR, 2016 WL 3655274, at *7 (W.D. Wash. July 8, 2016) ("In this opt-in FLSA collective action, however, doing nothing will have no effect on an employee's rights because he or she will not be bound by any judgment and remains free to bring his or her own suit.").

Lastly, the phrases "The Court overseeing this lawsuit ordered AscendTek to provide your information" (Dkt. No. 34-4 at 2) and "The Court allowed or 'certified' a collective action lawsuit" (*id.* at 3) are confusing and "might lead putative plaintiffs to believe that the court is endorsing the lawsuit rather than serving as a neutral arbiter." *See Bazzell*, 2016 WL 3655274, at *8.

Accordingly, the request for court-authorized notice is denied and the parties are instructed to file a stipulated notice form and schedule that address these issues.

### III. CONCLUSION

The motion for conditional certification and court-authorized notice is granted in part and denied in part. Dkt. No. 34.

The Court conditionally certifies a collective action of: All hourly, non-exempt AscendTek employees who (1) drove to a job site to perform their work duties; and/or (2) received any "per diem" as part of their compensation for the last three years.

The Court orders AscendTek to provide the following information to Plaintiff by March 7, 2025: the names, current or last known addresses, current or last known e-mail address(es) (non-company address if applicable), phone numbers, and dates of employment of each potential opt-in plaintiff in a usable electronic format.

The parties shall provide a joint statement with their proposed notice form(s) and schedule by March 7, 2025 for the Court's consideration. To the extent the parties cannot agree, the joint statement shall explain what the parties disagree on and each party's suggestion for resolution.

Dated this 7th day of February, 2025.

Kymberly K. Evanson
United States District Judge